## Neil, Appellant, *v.* Monongahela City.

*Negligence—Municipalities—Obstruction on sidewalk—Notice—Nonsuit.*

In an action against a municipality to recover damages for personal injuries to a boy six years old, a nonsuit is properly entered where the evidence shows that at the time of the accident the boy was rolling a wooden hoop on the pavement, that he tripped over a water or gas box of a private corporation, which extended above the level of the pavement; that the plaintiff's case was without any proof that the box extended above the pavement at any time, except at the time of the accident; or that the city had any notice of the condition of the box; or had anything to do with the condition in which it was found at the time of the accident.

Argued April 21, 1913. Appeal, No. 18, April T., 1913, by plaintiffs, from order of C. P. Washington Co., Feb.

Term, 1912, No. 64, refusing to take off nonsuit in case of Hazen Neil, by Fred Neil, his next friend and father, and Fred Neil in his own right, v. Monongahela City. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial the court entered a compulsory nonsuit. Subsequently the court overruled the motion to take off nonsuit, MCILVAINE, P. J., filing the following opinion:

On September 6, 1911, Hazen Neil, the seven-year-old son of Fred Neil, between the hours of five and six o'clock P. M., was rolling his hoop on the cement sidewalk of Lincoln street in Monongahela city, when he tripped and fell. In falling, his left arm struck the pavement in such a way as to fracture the forearm thereof. Fred Neil, the father, in his own right and as the next friend of his infant son, brought suit against the city to recover damages, alleging that the negligence of the city was the proximate cause of the boy's injury. When the plaintiffs closed their case, the defendant moved the court to enter a compulsory nonsuit for the reason that the testimony taken as true did not establish any negligence on the part of the city which caused the injury to young Neil. The compulsory nonsuit was granted, and the plaintiffs' motion to lift it is now before us for consideration.

The scene of the accident is shown by a photograph, marked exhibit "1." The part of Lincoln street appropriated to the sidewalk that was the scene of the accident is between seven and eight feet wide; that is, from the curb line at the edge of the driveway to the property line of abutting properties is seven or eight feet in width. In the center of this strip of ground dedicated to the sidewalk is laid a new cement walk four feet and six inches wide. On this new cement walk young Neil was rolling his hoop in broad daylight. A

private water company and a private gas company furnish water and gas to the abutting property owners on this side of Lincoln street, and water and gas pipes are laid underground from the center of the street to the property line and on into the house. Between the curb and the edge of the cement walk in the strip left for a grass plot was a gas box down to the gas, which afforded a means for the gas company to shut off the gas. A water box down to the water line to cut off the water was constructed by the water company near this gas box but farther in from the curb, so that it took a nick out of the edge of the cement walk about four or five inches square, leaving at that point four feet and one or two inches for pedestrians in place of the full four feet and six inches of cement walk. At the time of the accident the metal pipes that were used at the water box were up out of the ground ten or eleven inches, and the claim of the plaintiffs is that the boy tripped on this pipe that was projecting out of the water box when he fell. The plaintiffs' testimony was exceedingly brief, and we quote from it that which covers, as we believe, their whole case. "Q. Those boxes are put in there for the purpose of enabling them to reach down in the box and shut off the valve, turning the water off the house or turning it on, isn't that correct? A. Yes, sir. Q. Those boxes push down or slide down into themselves, push down into a sleeve as they are raised or lowered? A. Yes, sir. Q. About what is the diameter of these boxes, Mr. Neil? A. I would judge they are four inches and a half. Q. I believe they are metal and they are black? A. Yes, sir. Q. This is a cement sidewalk, a white sidewalk or rather light, isn't it? A. Yes, light. Q. And when you found your son it was still daylight? A. Yes, sir. Q. Between five and six o'clock? A. Yes, sir. Q. And there was no difficulty about seeing everything that was around there? A. No, it was light. Q. And this pipe stood up you think about eleven inches? A. Well, it was between ten and ten and half. Q. And

that pipe which was four or five inches in diameter, stood up there ten or eleven inches and anyone could see it, couldn't they? A. Provided they were looking right at it. Q. There was nothing to hide it, was there? A. No, I don't believe there was."

The substance of the boy's testimony is found in the following: "Q. And then what were you doing? A. Rolling hoop. Q. Was it a wooden or an iron hoop? A. Wooden. Q. And what happened to you? A. My foot caught there and I fell. Q. What did it catch on? A. On the water pipe. Q. And then you fell down and what did you fall on? A. My arm lit under me and I fell on the pavement."

There was no testimony introduced showing that this water pipe in the water box stood out of the ground ten or eleven inches at any time except at the time of the accident; nor was there a scintilla of evidence showing that the city or any of its officers or agents knew that the water pipe was standing up above the level of the cement walk, as is shown in the photograph exhibit "1." Nor was there any evidence that the city had anything to do with the locating of the water box or had anything to do with the raising up and down of this metal pipe that was used to shut off the water. Who raised up the pipe and left it standing up as it was at the time of the accident is not shown by the evidence, nor is it shown how long it had been standing up before the accident happened.

On these facts, was the negligence of the city sufficiently established to sustain a verdict in favor of the plaintiffs? At the trial we thought not, and we still so think.

There is no doubt that it was the duty of the city to keep its sidewalks safe for ordinary requirements, and that it must be diligent in seeing no obstructions are put in its streets, and if they are put in the streets by other persons, they must use diligence in having them removed. There is no complaint,—and I think could be

none,—that the cement sidewalk was not new and in good repair; nor can there be any complaint against the city for allowing the water company to make its water box in the edge of the cement sidewalk, provided it was made on a level with the cement walk, as shown in the photograph exhibit "1." If the iron pipe that was used in the water box to shut off the water and which the testimony shows raised up and down inside the box, was left standing up out of the ground ten or eleven inches, so as to make it dangerous for the ordinary use of the sidewalk, it would be clearly the duty of the city to see that the pipe was put back into the box so that it would not extend above the level of the cement walk. But as the water box belonged to the water company and not to the city, the leaving of the pipe projecting above the cement walk by the water company would not be negligence that could be attributed to the city. The city's duty was to use diligence and ordinary care to see that the company did not do anything to make it unsafe for pedestrians on the cement walk, and to use diligence and ordinary care to remove any obstruction on the sidewalk that they might have knowledge of. The fact that the city did not have control of this water box makes it a case in which the negligence cannot be inferred against the city, but makes it a case in which the plaintiff in order to recover must establish the negligence of the city. That being the case, we look in vain through the testimony that was offered by the plaintiffs to show any negligence on the part of the city in not having inspected this street as frequently as they should, or in not having discovered this projecting pipe in this water box, for the plaintiffs wholly failed to show that the pipe did project at any time except on the evening of the accident or at the time of the accident. It being a case where the cause of the accident was something that was left there by the water company to create the danger, it was incumbent on the plaintiffs to do one of two things,—either to show that they had

express notice or knowledge of the existence of this danger and failed to remove it, or that it had been there so long that it could be fairly said that they had constructive notice of it, for the reason that it could not have been there so long without the presumption arising that they had knowledge of it. There was evidence that this was a new cement walk and had been down about six months; but there is not a particle of evidence to show that this pipe in the water box had been standing as it was at the time of the accident since the pavement was made and the water box located. On the contrary, the testimony shows affirmatively that the iron pipe that was standing up in the box moved up and down for the purpose of shutting off the water, and this being the case there would no presumption arise that it had been standing up in the position it was at the time of the accident ever since the box was put in there, and the burden was on the plaintiff to show either that the city had knowledge that it was standing up long enough before the accident to have had time to remove it, or that it had been standing up so long before the accident that that knowledge could be presumed. Another thing to be considered in this case is that a municipality is bound to keep its sidewalks in a fairly safe, travelable condition, but the measure of its duty is only to keep them safe for ordinary requirements, and it is under no obligation to provide pavements safe for rolling hoops or roller skating; and although Hazen Neil was an infant and could not be guilty of contributory negligence, yet the manner in which he was using the streets and the manner in which the accident happened may be taken into consideration in determining whether or not the city was guilty of negligence, for they were only required to provide against such accidents as were the natural and probable consequence of the conditions as they existed, and to leave a black metal pipe at the edge of a white cement walk during the light of day, were certainly facts in this case

to show that there was nothing in the conditions there that required the city to make a frequent inspection of that street as a dangerous place in order to relieve them from the charge of negligence, and to cast the burden upon the plaintiffs to prove either express or constructive notice of the existence of a dangerous obstruction before they could recover.

And now, April 17, 1912, plaintiffs' motion to lift compulsory nonsuit came on to be heard and was argued by counsel, whereupon, upon due consideration, it is ordered, adjudged and decreed that the motion be overruled and that judgment be entered against the plaintiffs for costs.

*Error assigned* was refusal to take off nonsuit.

*Vernon Hazzard,* for appellants.

*Carl E. Gibson,* with him *W. K. Vance,* for appellee.

OPINION BY ORLADY, J., July 16, 1913:

This action of trespass was brought to recover damages for personal injuries received by a child by being thrown violently while rolling a wooden hoop on a pavement, and tripping against a water or gas box which extended above its level.

At the conclusion of the plaintiffs' testimony a nonsuit was entered which subsequently the court refused to lift for reasons set out in an opinion which so fully and clearly disposes of the appellant's contention in this court, that it is not necessary to add anything thereto.

We have carefully examined all the testimony and concur with the trial judge in his disposition of the case.

The judgment is affirmed.